NATIONAL FIRE INS. CO. v. HOUSE et al. (No. 1188.)

(Court of Civil Appeals of Texas. Amarillo. July 6, 1917. Rehearing Denied Oct. 3, 1917.)

1. INSURANCE ⬦493—FIRE—EXTENT OF LOSS —"TOTAL LOSS."

A building was a "total loss" after a fire, where a reasonably prudent owner, uninsured, could not have used any substantial part of the building left standing.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Total Loss.]

2. INSURANCE ⬦569—ADJUSTMENT OF LOSS— VALIDITY OF APPRAISAL — TOTAL LOSS — STATUTE.

A stipulation for appraisement or arbitration in a fire insurance policy is a nullity where there is a total loss, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 4874, providing that "a fire insurance policy, in case of a total loss by fire of property insured shall be held and considered to be a liquidated demand against the company for the full amount of such policy; provided, that the provisions of this article shall not apply to personal property."

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by Ellis P. House and others against the National Fire Insurance Company. Judgment for plaintiff named, and defendant appeals. Affirmed.

Crane & Crane, of Dallas, for appellant. Gano & Gano, Carden, Starling, Carden, Hemphill & Wallace, B. B. Hemphill and Bern Wilson, all of Dallas, for appellees.

HALL, J. The following portion of the statement of the nature and result of the suit from appellant's brief, acquiesced in by appellee, is adopted:

"Ellis P. House instituted this suit in the district court of Dallas county, Tex., against appellant, National Fire Insurance Company, upon a contract of fire insurance. It was alleged that on October 13, 1913, appellant issued its policy to appellee House, under the terms of which appellant insured the latter for a period of three years from said date, against all loss or damage by fire, in an amount not to exceed $2,000, to his dwelling house situated at No. 101 West Twelfth street, in the city and county of Dallas, state of Texas: that on August 8, 1914, the property was totally destroyed by fire, to his damage in the sum of $6,500; that all of the conditions required of

him by the policy had been complied with; that the Scottish-American Mortgage Company, Limited, held certain lien indebtedness of about $1,750 against the property, which was further secured by a standard mortgage clause attached to the policy, wherein it was stipulated that any loss or damage ascertained to be due should be payable to it as its interest might appear. Appellee sued for himself and for the benefit of the Mortgage Company, and prayed for judgment for the full amount of the policy, with interest. The gist of appellant's answer was that the building was not totally destroyed; that after the fire the parties could not agree as to the amount of the loss and damage to the dwelling, and that appellant demanded an appraisal of the loss as was provided for in the policy; that on August 27, 1914, appellee House and appellant executed a written agreement to appraise the lots, the former designating C. T. Douglas, of Dallas, and the latter H. W. Childs, of Dallas, as appraisers; that these two gentlemen took an oath, selected an umpire, and thereafter rendered an award, finding the sound value of the building at the time of the fire at $7,000, and the loss and damage thereto to be $2,835; that appellant was liable for one-half of said award (there being other insurance upon the property for $2,000 concurrent with the policy sued on), and it admitted it to be one-half of $1,417.50, which it alleged it had tendered to the said House prior to the institution of the suit. It prayed that plaintiff have judgment for the sum of $1,417.50, and that all the costs be adjudged against appellee House. In a supplemental petition, after interposing certain special exceptions to the answer and numerous special denials, appellee House attacked the award, upon numerous grounds. The Scottish-American Mortgage Company, Limited, intervened and adopted the pleadings of appellee House. It alleged that its lien indebtedness amounted to the sum of $2,000, with interest thereon at 8 per cent. per annum from December 1, 1915. The cause was submitted to the jury upon special issues and upon the verdict rendered the court entered judgment against appellant in favor of appellee House in the sum of $2,148 with interest at 6 per cent. from March 27, 1916, of which sum it was adjudged House recovered the sum of $2,029.76, with interest, for the use and benefit of the Scottish-American Mortgage Company."

[1] The following are some of the issues submitted to the jury, with the answers returned:

"First. Was the remnant of the structure standing after the fire reasonably adapted to use as a basis upon which to restore the building to the condition in which it was before the fire? Answer: No.

"Second. Would a reasonably prudent owner, uninsured, desiring such a structure as the one in question was, immediately before the fire, in proceeding within a reasonable time after the fire to restore the building to its said condition immediately before the fire, have torn down those portions of the building left standing? Answer: Yes.

"Q. Would a reasonably prudent owner, uninsured, desiring such a structure as the building of plaintiff was immediately before the fire, in proceeding to restore it to its condition immediately before the fire, utilize any substantial part of the portion of the building standing as the basis upon which to rebuild? Answer: No."

The effect of these findings is that the building was a total loss after the fire. Am. Cent. Ins. Co. v. Murphy, 61 S. W. 956; Murphy v. Am. Cent. Co., 25 Tex. Civ. App. 241, 54 S. W. 407; H. & B. Fire Ins. Co. v. Garlington, 66 Tex. 103, 18 S. W. 337, 59 Am. Rep. 613; Royal Ins. Co. v. McIntyre, 34 S. W. 669.

The eighth issue submitted to the jury and answer are as follows:

"At the time the agreement for appraisal was made, did both plaintiff and defendant believe, and in making such agreement for appraisement act upon the belief, that the house could be repaired, and that the portion of the structure standing was reasonably adapted for use as a basis upon which to restore the building to the condition in which it was immediately before the fire? Answer: Yes."

[2] The findings of the jury upon the remaining issues submitted have the effect of declaring the appraisement a nullity, but it is not necessary to base the disposition of the appeal upon the invalidity of the arbitration proceedings. Appellant has briefed the case with reference to the arbitration and its effect, practically all of its assignments relating directly or indirectly to that issue. We have concluded that the award is not binding upon the appellee. Article 4874, Vernon's Sayles' Civil Statutes, provides:

"A fire insurance policy, in case of a total loss by fire of property insured shall be held and considered to be a liquidated demand against the company for the full amount of such policy; provided, that the provisions of this article shall not apply to personal property."

The holding of the courts is practically uniform that a stipulation for an appraisement or arbitration, when the facts of the case bring it within the statute, is a nullity. Liverpool, London & Globe Ins. Co. v. Colgin, 34 S. W. 291; Ætna Ins. Co. v. Shacklett, 57 S. W. 583; Prather v. Conn. Fire Insurance Co., 188 Mo. App. 653, 176 S. W. 527; 14 R. C. L. Insurance, § 525, p. 1355, and authorities there cited. An excellent discussion of this question is found in the note to Williams v. Branning Mfg. Co., 47 L. R. A. (N. S.) 433, citing numerous authorities sustaining the rule, from which we quote with approval as follows:

"When a statute required the insurer to pay the policy holder the full sum written in the policy in case the property insured thereby shall be entirely destroyed by fire or other disaster insured against, the provisions in the policy for an appraisement of the amount of any loss are abrogated, nullified, and rendered nugatory by operation of law when the loss is total."

"Under the operation of such a statute an arbitration to fix the amount of a loss is unnecessary, because there is naught that is legally the subject of an arbitration; there is nothing to arbitrate."

"In such a case, the statute having determined the matter and fixed the amount, the very instant the property insured was wholly destroyed the agreement to arbitrate is nudum pactum—there is no consideration to support it; no benefit or advantage inures to the policy holder—no harm or disadvantage results to the underwriter from the agreement to arbitrate. It is a mere gratuity, and binds neither."

"If the amount of a loss or damage to insured property is undisputable, either by the terms of the policy or by statute, the agreement to arbitrate is void, and the enactment of such a statute as has just been referred to manifests

a public policy conclusively to close the question of value of property totally destroyed, which renders, whenever a loss is total, the usual provision for arbitration nugatory."

Under the finding of the jury that the parties entered into an arbitration under a mutual mistake as to the extent of the loss, the case is relieved of all questions raised by the pleadings and evidence upon the sufficiency of the arbitration proceedings, and the court is relieved of the duty of considering the assignments bearing upon it.

The judgment is therefore affirmed.